**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

N. DUWAYNE CROFTON 2007 IRREVOCABLE TRUST, JANICE CROFTON and KEVIN CROFTON,

Plaintiffs,

v. CASE NO.:

HEIGHTS MEAT MARKET, LLC, DOUGLAS W. COOGLE, JR., and LEE & DAVIS COUNTRY MEATS, LLC,

Defendants.
_____________________________________________/

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiffs, N. DUWAYNE CROFTON 2007 IRREVOCABLE TRUST, JANICE CROFTON and KEVIN CROFTON ("Plaintiffs"), hereby file this complaint against the Defendants, HEIGHTS MEAT MARKET, LLC, DOUGLAS W. COOGLE, JR., and LEE & DAVIS COUNTRY MEATS, LLC (collectively, "Defendants"), and allege as follows:

**JURISDICTION, VENUE AND PARTIES**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue lies within the Middle District of Florida because a substantial part of the events giving rise to this claim arose in Hillsborough County, Florida.

3. At all times material, Plaintiffs are/were residents of Hillsborough County, Florida.

4. At all times material, Defendants Heights Meat Market LLC and Lee & Davis Country Meats, LLC, were and are Florida corporations.

5. At all times material, Defendant Coogle was/is a resident of Hillsborough County, Florida.

**BACKGROUND**

6. N. DuWayne Crofton was the owner and president for 40 years of Crofton and Sons, Inc., a meat and sausage manufacturer that manufactured and distributed quality food products throughout the southeast United States. N. DuWayne Crofton passed away on August 5, 2017.

7. Kevin Crofton is the son of N. DuWayne Crofton. In 2013, N. DuWayne Crofton named Kevin Crofton the President of Crofton and Sons, Inc., of which he also was partial owner.

8. Jamie Cooler is Kevin Crofton's cousin (and the niece of N. DuWayne Crofton). On October 26, 2013, Ms. Cooler married Douglas Coogle ("Coogle"). Coogle thus became a member of the Crofton family.

9. In late 2013, Kevin Crofton hired Coogle at Crofton & Sons, Inc. to work in the accounting office. Coogle was soon promoted to Chief Financial Officer.

10. Also in late 2013, Kevin Crofton brought Coogle on as a manager of Crofton L & D Meats Holdings, LLC ("Lee & Davis"), a separate distributor of meat products headquartered in Georgia. Lee & Davis was owned by Crofton & Sons, Inc.

**LEE & DAVIS COUNTRY MEATS PARTNERSHIP**

11. On April 16, 2014, Crofton & Sons, Inc. filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. Kevin Crofton and Coogle worked together through the bankruptcy proceedings, and had daily meetings, lunches and conversations on how to maneuver all matters concerning Crofton & Sons, Inc.

12. On May 22, 2015, Coogle filed with the Florida Division of Corporations the Articles of Organization for "Lee & Davis Country Meats, LLC" ("L&D Country Meats"). Coogle put no funds into ownership of L&D Country Meats.

13. On June 12, 2015, the Bankruptcy Court approved the sale of Lee & Davis to L&D Country Meats, with L&D Country Meats assuming all obligations including certain specified indebtedness. The sale was contingent upon Coogle "remain[ing] the sole member of [L&D Country Meats]" through the closing date.

14. On April 15, 2016, the Trustee of the Creditor Trust for Crofton & Sons filed an adversary complaint against Coogle and L&D Country Meats to avoid and recover alleged fraudulent transfers made by Coogle. The Trustee alleged that Coogle converted cash and other assets of Crofton & Sons to or for the benefit of Lee & Davis and to his own personal benefit and thereby became the owner of L&D Country Meats, which purchased the assets of Lee & Davis, having been augmented by assets secretly stripped from the Crofton & Sons Estate.

15. On August 5, 2017, N. DuWayne Crofton passed away. He was survived by his wife of 52 years, Plaintiff Janice Crofton and his four children, including Plaintiff Kevin Crofton. Ownership of certain assets and insurance proceeds were transferred to the N. Duwayne Crofton 2007 Irrevocable Trust ("Irrevocable Trust"), the named Plaintiff in the instant action.

16. On September 6, 2017, Coogle entered into a settlement agreement with the Trustee of the Creditor Trust for Crofton & Sons with respect to the alleged fraudulent transfers to himself and L&D Country Meats. The Crofton & Sons bankruptcy case ultimately closed on December 12, 2018

17. Under Coogle's leadership, L&D Country Meats struggled financially. On September 22, 2017, Coogle convinced Janice Crofton (1 ½ months after her husband passed away) to make an interest-free loan of $100,000.00 from her inheritance to L&D Country Meats, with a payment in the amount of $100,000.00 due to be repaid by September 22, 2019.

18. In late 2017, Coogle, Janice Crofton and Kevin Crofton engaged in further discussions regarding the ongoing financial struggles of L&D Country Meats and the concept of creating a partnership. The initial discussions were between Coogle and Janice Crofton during gatherings at the beach. Coogle knew that N. DuWayne Crofton recently had passed away and was aware of the presence of life insurance proceeds. Janice Crofton then brought the idea of a partnership to Kevin Crofton.

19. Coogle, Janice Crofton and Kevin Crofton met in person. During these discussions, the parties verbally agreed to create a partnership, whereby Kevin Crofton would contribute his industry connections, good will, knowledge, recipes and trade secrets to L&D Country Meats to create an opportunity to grow and succeed.

20. As part of the verbal partnership agreement ("L&D Agreement"), Coogle, Janice Crofton and Kevin Crofton further agreed that funds would be strategically injected from the Irrevocable Trust into L&D Country Meats as needed at the time, and Janice Crofton and Kevin Crofton became partners of L&D Country Meats. In exchange for 50 percent ownership/equity in L&D Country Meats, Janice Crofton and Kevin Crofton agreed to provide a $450,000.00 investment to L&D Country Meats from the Irrevocable Trust, to be repaid as a loan at $4,000.00 per month with interest in arrears, protected by collateral of all assets of the company, except the building.

21. Meanwhile, Kevin Crofton was to become employed by L&D Country Meats in a sales/marketing capacity. L&D Country Meats promised to pay Kevin Crofton commissions on all sausage sales with a tiered progressive pay scale based on volume. Coogle and Crofton also would be entitled to a year-end bonus based on the respective equity ownership of the company.

22. Pursuant to the L&D Agreement, the parties, including Coogle, agreed that Coogle and the Crofton's would each be entitled to 50 percent of the value of L&D Country Meats at the time the business was sold, "whenever that day is."

23. Coogle discouraged putting the L&D Agreement in writing because the Crofton and Sons bankruptcy had not yet closed, and Coogle was required to remain "the sole member of" L&D Country Meats through the closing date, pursuant to the terms of the sale of Lee & Davis to L&D Country Meats.

24. At the end of the meeting, there was a clear understanding that a partnership and co-ownership relationship was created. Coogle, Janice Crofton and Kevin Crofton all agreed, hugged, shook hands and prayed as family. Plaintiffs did not have an issue with the L&D Agreement being verbal because they were family and Plaintiffs trusted Coogle.

25. Ultimately, the $450,000.00 investment from the Irrevocable Trust was split into a few installments/injections over a few months. The checks were written to L&D Country Meats, directly to Coogle and later to Heights Meat Market, LLC, as discussed below.

**HEIGHTS MEAT MARKET PARTNERSHIP**

26. Initially, plans for the L&D Country Meats partnership were to transform L&D

Country Meats from just distribution to a full manufacturing and distribution company, similar to Crofton & Sons but on a smaller scale, including a manufacturing facility to manufacture its own sausage (L&D Country Meats and Crofton private labels). After re-assessing the initial plans, Coogle and Crofton decided to remain with their existing manufacturer for all L&D Country Meats sausage products.

27. At that point, the focus of L&D Country Meats turned to creating a "hub" in Tampa for storage and distribution of L&D Country Meats products in the Tampa Bay area. As partners and co-owners, Coogle and Crofton looked at multiple locations, ultimately selecting a location at 4001 N. Florida Ave., Tampa, FL 33603. As partners and co-owners, Coogle and Crofton negotiated with the owners and worked on a lease.

28. As partners and co-owners, Coogle and Crofton decided to utilize the 4001 N. Florida Ave. location to create a new retail business, called Heights Meat Market. On April 23, 2018, Coogle filed Articles of Organization for Heights Meat Market, LLC ("Heights Meat Market").

29. Coogle, Janice Crofton and Kevin Crofton entered into a verbal agreement ("Heights Agreement") whereby $100,000.00 would be injected into the Heights Meat Market project, $50,000.00 of which came directly from the Irrevocable Trust and the other $50,000.00 from the initial $400,000.00 Irrevocable Trust investment to L&D Country Meats. Again, Coogle discouraged reducing the Heights Agreement to writing because the Crofton and Sons bankruptcy had not yet closed.

30. Pursuant to the Heights Agreement, Coogle and the Crofton's were co-owners and would each be entitled to 50 percent of the value of Heights Meat Market at the time the business was sold… "Same deal as Lee & Davis" was the way they phrased

it.

31. Pursuant to the Heights Agreement, Coogle and Crofton continued as partners to complete the Heights Meat Market project. They worked together as partners with vendors, contracts and construction. They discussed the overall business plan daily and made all business decisions together.

32. Consistent with the Heights Agreement, Coogle stated multiple times on the company website and in other news articles that he and Crofton were co-owners of Heights Meat Market. All photographs, social media posts and public appearances such as events and ribbon cuttings show Coogle and Crofton together as partners and co-owners.

33. Heights Meat Market opened for business in late September/early October 2018. Meanwhile, Kevin Crofton became employed by Heights Meat Market. Crofton worked in the store mostly on weekends, cooking, giving out samples and helping customers in the store. Crofton also was on the road doing sales and repping sausage during the week. He also performed cooking and prep duties at special events, demos, tailgates, etc. Crofton never received a paycheck or compensation for any of his work.

34. Kevin Crofton contributed his industry connections, good will, knowledge and trade secrets to Heights Meat Market to create an opportunity to grow and succeed, and spent long hours preparing the facilities and creating the company logo. Coogle used these connections and good will to advertise Heights Meat Market as Crofton's company. For example, Coogle had the grill wrapped for use at the store and at events, demos, etc. The top of the grill sign said "CROFTON – COOGLE." Coogle explained that he "wanted everyone to know we're partners." Coogle even put the names "CROFTON – COOGLE"

on the front of the store on the first window wraps.

35. At the end of the summer/fall 2019, Coogle told Kevin Crofton that L&D Country Meats was suffering financially and asked Crofton if he could get by for a short time without a commission check and asked to see if he could find another job to get through "tough times." Crofton was able to find temporary employment during the week. Meanwhile, Crofton continued to perform work for Heights Meat Market on the weekends.

**FINANCIAL MISDEALINGS**

36. In January 2020, Crofton's outside temporary employment ended and he returned to work greater hours at Heights Meat Market. At this time, Coogle began behaving evasively and furtively, particularly when Crofton asked to sit down to discuss the financials.

37. Meanwhile, during the first two months of 2020, Coogle started lying to Crofton about company operations and things that were going on, such as events, plans, etc. Crofton also caught Coogle misappropriating company funds and other improper behavior. Crofton again asked Coogle for an accounting or review of the company financials, but Coogle repeatedly evaded all such requests.

38. On March 2, 2020, without Plaintiffs' knowledge or consent, Coogle filed with the Florida Division of Corporations the Articles of Organization for a new company called Heights Meat Market Land O' Lakes, LLC, naming himself as the Managing Member.

39. Without Plaintiffs' knowledge or consent, Coogle diverted funds from Heights Meat Market and/or L&D Country Meats to establish, open and operate Heights Meat Market Land O' Lakes, LLC. By doing so, Coogle and Heights Meat Market

improperly misappropriated Plaintiff's ownership interests in the businesses, including but not limited to their interests in the trademarks, good will and corporate opportunities of the business.

40. Through the above actions, Defendants have withheld from Plaintiffs their 50% ownership interest in the businesses, deprived Plaintiffs of the profits of the businesses, and formed and diverted resources to Heights Meat Market Land O Lakes, LLC.

41. Coogle has expressed to Plaintiff Janice Crofton that he now denies that Plaintiffs and Defendants ever entered into either the L&D Agreement or the Heights Agreement, and that he now falsely takes the position that the funds provided by Ms. Crofton and the Irrevocable Trust were merely loans to the Defendants.

42. On March 31, 2020, Plaintiffs demanded in writing that Defendants cease and desist these actions and demanded a full accounting of the financials of Heights Meat Market, LLC, Lee & Davis Country Meats, LLC and Heights Meat Market Land O Lakes, LLC.

43. On April 1, 2020, Coogle, through his counsel, again denied that Plaintiffs and Defendants entered into either the L&D Agreement or the Heights Agreement, and claimed that the funds provided by Ms. Crofton and the Irrevocable Trust "were in no way contemplated to convey any interest in the company or its profits." Coogle further falsely stated that "[t]here were no written or oral agreements indicating that any ownership interest would be given to the Croftons, nor were these loans secured by any collateral or business assets."

44. Plaintiffs have been required to retain the undersigned counsel to represent

them in this action and are obligated to pay them a reasonable fee for their services.

**COUNT I**
**BREACH OF CONTRACT**
**(ALL DEFENDANTS)**

45. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 44 as if fully restated herein.

46. The actions taken by Defendants have materially violated the specific terms of the L&D Agreement and the Heights Agreement. Defendants are liable for the losses of Plaintiffs that have resulted from its breaches of the Agreement.

47. Defendants materially breached and anticipatorily breached its contracts with Plaintiffs as set forth in detail herein, including by expressly disavowing Plaintiffs' fifty percent ownership share of Heights Meat Market, LLC and Lee & Davis Country Meats, LLC.

48. Plaintiffs have performed all, or substantially all, of the obligations imposed on them under the Agreement. There is no legitimate defense for Defendants' conduct.

49. Plaintiffs sustained damages as a result of Defendants' direct and anticipatory breaches of contract.

**WHEREFORE**, Plaintiffs respectfully request that this Court issue an Order awarding: Actual damages for material and anticipatory breach; declaratory, preliminary injunctive relief, and permanent injunctive relief enjoining the Defendants from further breaches of the Agreement; Restitution to Plaintiffs; Compensatory damages; Pre-judgment interest at the maximum rate permitted and costs; Disgorgement of, and accounting of, the ill-gotten gain derived by Defendants from their misconduct; and Such other and further relief as the Court deems just and proper.

**COUNT II**
**QUANTUM MERUIT**
**(ALL DEFENDANTS)**

50. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 44 as if fully restated herein.

51. Although the L&D Agreement and the Heights Agreement were not reduced to writing, the Defendant's assented to those terms through performance and, thus, those agreements are implied in fact.

52. The Plaintiffs and Defendants performed services pursuant to the terms the L&D Agreement and the Heights Agreement under circumstances in which Defendants understood and intended those terms and conditions would be satisfied and, therefore, the law imputes the existence of the contracts based upon the parties' conduct.

53. Defendants acquiesced in the provision of the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement.

54. Defendants were aware that Plaintiffs expected a fifty percent ownership share of Heights Meat Market, LLC and Lee & Davis Country Meats, LLC in consideration for such services and funding.

55. Defendants were unjustly enriched thereby as a result of the provision of the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement.

**WHEREFORE**, Plaintiffs respectfully request that this Court issue an Order awarding: Restitution from Defendants for the value of the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement;

Disgorgement of, and accounting of, all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct; Pre-judgment interest at the maximum rate permitted and costs; and Such other and further relief as the Court deems just and proper.

**COUNT III**
**UNJUST ENRICHMENT**
**(ALL DEFENDANTS)**

56. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 44 as if fully restated herein.

57. Defendants accepted the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement.

58. Defendants have not satisfied their obligations under the L&D Agreement and the Heights Agreement, including expressly refusing to recognize Plaintiffs' fifty percent ownership share of Heights Meat Market, LLC and Lee & Davis Country Meats, LLC.

59. As alleged herein, Defendants were unjustly enriched at the expense of Plaintiffs in the form of the value of the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement.

60. Plaintiffs were unjustly deprived of money obtained by Defendants as a result.

61. It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiffs as a result of their wrongful conduct alleged herein.

62. Plaintiffs are entitled to seek and do seek restitution from Defendants as

well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct.

**WHEREFORE**, Plaintiffs respectfully request that this Court issue an Order awarding: Restitution from Defendants for the value of the services and funding provided by Plaintiffs consistent with the terms the L&D Agreement and the Heights Agreement; Disgorgement of, and accounting of, all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct; Pre-judgment interest at the maximum rate permitted and costs; and Such other and further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF FIDUCIARY DUTIES
## (DEFENDANT COOGLE)

63. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 to 44 as if fully restated herein.

64. Coogle was at all material times, an officer and/or in control of Heights Meat Market, LLC and Lee & Davis Country Meats, LLC, which are co-owned by Plaintiffs.

65. At all material times, Coogle owed fiduciary duties to Plaintiffs, Heights Meat Market, LLC and Lee & Davis Country Meats, LLC.

66. The fiduciary duties owed by Coogle to Plaintiffs, Heights Meat Market, LLC and Lee & Davis Country Meats, LLC included duties of care and loyalty.

67. The duty of loyalty includes the duty to avoid conflicts of interest, to refrain from obtaining secret profits, to refrain from seizing corporate opportunities, to refrain from voting on, engaging in, or approving transactions involving Heights Meat Market, LLC and Lee & Davis Country Meats, LLC and other entities in which he had or may have

pecuniary interests.

68. As detailed above, numerous transfers were made out of Heights Meat Market, LLC and Lee & Davis Country Meats, LLC to or for the benefit of Coogle, Heights Meat Market Land O Lakes, LLC, and to other insiders and affiliates.

69. Coogle made these transfers for the benefit of himself and Heights Meat Market Land O Lakes, LLC without receiving any reasonably equivalent value from Heights Meat Market Land O Lakes, LLC or persons or related entities.

70. The transfers were made for the direct or indirect benefit of Coogle and Heights Meat Market Land O Lakes, LLC and (a) were taken by him or it for their own personal gain; (b) were not intended to benefit Plaintiffs, Heights Meat Market, LLC or Lee & Davis Country Meats, LLC; (c) did not benefit Plaintiffs, Heights Meat Market, LLC or Lee & Davis Country Meats, LLC and (d) were not fair and reasonable to Plaintiffs, Heights Meat Market, LLC or Lee & Davis Country Meats, LLC when made.

71. Coogle breached his duties of care and loyalty by, among other things, voting on, engaging in, and approving transactions and transfers of funds through and from Heights Meat Market, LLC or Lee & Davis Country Meats, LLC to or for the benefit of Coogle and Heights Meat Market Land O Lakes, LLC.

72. Coogle's breaches of his fiduciary duties were the proximate cause of damages incurred by Plaintiffs, Heights Meat Market, LLC or Lee & Davis Country Meats, LLC.

**WHEREFORE**, Plaintiffs respectfully request the entry of a judgment against Coogle: (i) for damages incurred by Plaintiffs resulting from Coogle's breaches of his fiduciary duties, together with accrued pre-judgment interest; (ii) ordering the payment of

all costs and expenses incurred in regard to this action; and (iii) awarding any other relief the Court deems just and proper.

**COUNT V**
**UNPAID MINIMUM WAGES – FLORIDA CONSTITUTION**
**(ALL DEFENDANTS)**

73. Plaintiff Kevin Crofton hereby incorporates by reference the allegations contained in Paragraphs 1-5, 21, 33 and 44 as if fully restated herein.

74. During the three (3) year period prior to filing this action, Plaintiff Kevin Crofton performed work for Defendants Heights Meat Market, LLC and Lee & Davis Country Meats, LLC as an employee of Defendants.

75. Defendants Heights Meat Market, LLC and Lee & Davis Country Meats, LLC are employers as defined by Art. X, Sec. 24 of the Florida Constitution.

76. Defendant Coogle is subject to individual liability under Art. X, Sec. 24 of the Florida Constitution because he acted directly or indirectly in the interest of the employer in relation to Plaintiff Crofton, exercised significant control over the company's operations, has the power to hire and fire employees, the power to determine salaries, the responsibility to maintain employment records and have operational control over significant aspects of the company's day-to-day functions.

77. Plaintiff Kevin Crofton was employed by Defendants during the relevant time period as described above. In those roles, Plaintiff Crofton regularly travelled across state lines to Georgia and elsewhere and utilized the internet, telephone and interstate wires to engage in interstate communications with vendors.

78. Plaintiff Crofton was engaged in interstate commerce during his employment with Defendants.

79. Plaintiff Crofton regularly handled and worked on goods and materials that have been moved in or produced for interstate commerce.

80. Plaintiff Crofton performed work for Defendants, Defendants were aware that Plaintiff Crofton was performing such work, and Defendants acquiesced in the provision of those services.

81. Plaintiff Crofton was an employee of Defendants under Art. X, Sec. 24 of the Florida Constitution, regularly worked multiple hours per workweek, but was not compensated for his services, including not receiving minimum wages for all hours worked.

82. Defendants failed to comply with Art. X, Sec. 24 of the Florida Constitution because Plaintiff Crofton was not paid minimum wages as required by Art. X, Sec. 24 of the Florida Constitution.

83. Defendants' violations of Art. X, Sec. 24 of the Florida Constitution were knowing, willful and in reckless disregard of the rights of Plaintiff Crofton. Defendants did not have reasonable grounds for believing that their acts were not a violation of Art. X, Sec. 24 of the Florida Constitution.

84. Defendants failed to keep accurate time records as required by Art. X, Sec. 24 of the Florida Constitution. Accordingly, Plaintiff Crofton is required to provide only a reasonable approximation of the number of hours worked for which compensation is owed, which is presumed correct. The burden then shifts to the Defendants to overcome this presumption. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88 (1946).

85. During the three (3) year period prior to filing this action, Defendants failed to pay Plaintiff Crofton's minimum wages as required by Art. X, Sec. 24 of the Florida Constitution, and were unjustly enriched thereby.

86. Plaintiff Crofton did not receive payments at a rate at least equal to the minimum wage for all hours worked as required by the Florida Constitution.

87. Defendants' failure to provide Plaintiff Crofton minimum wage compensation constitutes a violation of Art. X, Sec. 24 of the Florida Constitution.

88. Accordingly, Plaintiff Crofton is entitled to unpaid wages, liquidated damages, post-judgment interest, reasonable attorneys' fees and costs and other damages provided by Florida Statute § 448.08 and Art. X, Sec. 24 of the Florida Constitution.

**WHEREFORE**, Plaintiff Kevin Crofton respectfully requests that this Court issue an Order awarding damages in the amount of the unpaid minimum wages owed, awarding liquidated damages pursuant, awarding reasonable attorneys' fees and costs pursuant to Florida Statute § 448.08 and Art. X, Sec. 24 of the Florida Constitution, awarding injunctive relief requiring Defendants to comply with Art. X, Sec. 24 of the Florida Constitution, awarding post-judgment interest, and awarding all such other relief as the Court deems just and appropriate.

## COUNT II
## UNPAID MINIMUM WAGES – FLSA
## (ALL DEFENDANTS)

89. Plaintiff Kevin Crofton hereby incorporates by reference the allegations contained in Paragraphs 1-5, 21, 33 and 44 as if fully restated herein.

90. During the three (3) year period prior to filing this action, Plaintiff Kevin

Crofton performed work for Defendants Heights Meat Market, LLC or Lee & Davis Country Meats, LLC as an employee of Defendants.

91. Defendants Heights Meat Market, LLC or Lee & Davis Country Meats, LLC are employers as defined by the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b), et seq. ("FLSA").

92. Defendant Coogle is subject to individual liability under the FLSA because he acted directly or indirectly in the interest of the employer in relation to Plaintiff Crofton, exercised significant control over the company's operations, has the power to hire and fire employees, the power to determine salaries, the responsibility to maintain employment records and have operational control over significant aspects of the company's day-to-day functions.

93. Plaintiff Kevin Crofton was employed by Defendants during the relevant time period as described above. In those roles, Plaintiff Crofton regularly travelled across state lines to Georgia and elsewhere and utilized the internet, telephone and interstate wires to engage in interstate communications with vendors.

94. Plaintiff Crofton was engaged in interstate commerce during his employment with Defendants.

95. Plaintiff Crofton regularly handled and worked on goods and materials that have been moved in or produced for interstate commerce.

96. Plaintiff Crofton performed work for Defendants, Defendants were aware that Plaintiff Crofton was performing such work, and Defendants acquiesced in the provision of those services.

97. Plaintiff Crofton was an employee of Defendants under the FLSA, regularly

worked multiple hours per workweek, but was not compensated for his services, including not receiving minimum wages for all hours worked.

98. Defendants failed to comply with the FLSA because Plaintiff Crofton was not paid minimum wages as required by the FLSA.

99. Defendants' violations of the FLSA were knowing, willful and in reckless disregard of the rights of Plaintiff Crofton. Defendants did not have reasonable grounds for believing that their acts were not a violation of the FLSA.

100. Defendants failed to keep accurate time records as required by the FLSA. Accordingly, Plaintiff Crofton is required to provide only a reasonable approximation of the number of hours worked for which compensation is owed, which is presumed correct. The burden then shifts to the Defendants to overcome this presumption. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88 (1946).

101. During the three (3) year period prior to filing this action, Defendants failed to pay Plaintiff Crofton's minimum wages as required by the FLSA, and were unjustly enriched thereby.

102. Plaintiff Crofton did not receive payments at a rate at least equal to the minimum wage for all hours worked as required by the FLSA.

103. Defendants' failure to provide Plaintiff Crofton minimum wage compensation constitutes a violation of the FLSA.

104. Accordingly, Plaintiff Crofton is entitled to unpaid wages, liquidated damages, post-judgment interest, reasonable attorneys' fees and costs and other damages provided by the FLSA.

**WHEREFORE**, Plaintiff Crofton respectfully requests that this Court issue an Order

awarding damages in the amount of the unpaid minimum wages owed, awarding liquidated damages pursuant to 29 U.S.C. § 216(b), awarding reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), awarding injunctive relief requiring Defendants to comply with the FLSA, awarding post-judgment interest, and awarding all such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Plaintiffs demand a jury trial on all claims so triable.

**VERIFICATION**

I, Janice Crofton, declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

By: _*/s/ Janice Crofton*_____________
JANICE CROFTON

Dated: June 18, 2020.

Respectfully submitted,

/s/ Jay P. Lechner________
**LECHNER LAW**
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiffs*