# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

N. DUWAYNE CROFTON 2007 IRREVOCABLE
TRUST, JANICE CROFTON and
KEVIN CROFTON,

              Plaintiffs,

v.

HEIGHTS MEAT MARKET, LLC,
DOUGLAS W. COOGLE, JR., and
LEE & DAVIS COUNTRY MEATS, LLC,

              Defendants.

Case No. 8:20-cv-01411

---

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is entered into this ____ day of August, 2020 by Kevin Crofton, Trustee of the N. Duwayne Crofton 2007 Irrevocable Trust, Kevin Crofton, individually, Janice Crofton, individually (the "Crofton Parties"), Heights Meat Market, LLC, a Florida limited liability company, Lee & Davis Country Meats, LLC, a Florida limited liability company, Douglas Coogle, Jr., individually and Jaime Coogle, individually (the "Coogle Parties"). Collectively all of the parties hereto shall be referred to as the "Parties."

## RECITALS

Whereas, the Crofton Parties contend that funds totaling $451,500 provided to Heights Meat Market, LLC ("HMM"), Lee & Davis Country Meats, LLC ("L&D"), and Douglas Coogle, Jr. from September 2017 through September 2018 (the "Disputed Funds") comprised a hybrid loan and purchase of an ownership interest HMM and L&D; and

Whereas, the Coogle Parties contend that the Disputed Funds were loans to L&D that have been repaid, in part, through regular monthly payments of $4,000 that commenced in December 2017 and continued, uninterrupted, through August 1, 2020; and

Whereas, Kevin Crofton alleges entitlement to damages against the Coogle Parties under the Fair Labor Standards Act ("FLSA") and the laws of the State of Florida for unpaid wages, minimum wage, overtime, and liquidated damages for services provided by him to HMM and L&D; and

Whereas, HMM and L&D contend that even if Kevin Crofton was an employee, he did not work sufficient hours to be entitled to overtime and the outside sales services provided by Kevin Crofton make him exempt under the FLSA and Florida law; and

Whereas, there exists a bona fide dispute between the Parties regarding Kevin Crofton's worker classification; the number of hours actually worked; whether he was compensated for all hours worked; and whether overtime and/or liquidated damages are owed.

Whereas, the Crofton Parties filed suit against HMM, L&D and Douglas Coogle, Jr. on June 18, 2020 in the United States District Court, Middle District of Florida, Tampa Division, Case No. 8:20-CV-01411 (the "Lawsuit"); and

Whereas, the Coogle Parties acknowledge that a balance remains on the Disputed Funds loans but otherwise deny the allegations of the Lawsuit;

Whereas, in order to avoid the time and expense of litigating the Lawsuit, the Parties appeared at mediation on August 6, 2020 and came to a resolution of all claims through the execution of a Settlement Agreement of the Parties, a true and accurate copy of which is attached as Exhibit No. 1, and through this Agreement wish to set forth all terms of settlement to resolve all claims.

**NOW, THEREFORE,** for and in consideration of the sum of ten dollars and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and the covenants and promises set forth below, the Parties agree as follows:

## AGREEMENT

1.    Court Approval.  The terms of this Agreement are contingent upon entry of an Order of Dismissal With Prejudice in the Lawsuit.  Plaintiffs and their counsel agree to cooperate with counsel for Defendants and take all actions necessary to obtain approval of this Agreement and dismissal of the Litigation with prejudice for no additional consideration, including but not limited to jointly filing the Joint Stipulation and Motion for Approval of FLSA Settlement Agreement and Dismissal With Prejudice in the form attached as Exhibit No. 2.

2.    General Release, Warranty and Acknowledgment.  The Crofton Parties hereby RELEASE, ACQUIT, AND FOREVER DISCHARGE, and by these presents do release, remise and discharge the Coogle Parties and their respective heirs, parent companies, subsidiaries, and affiliates, members, managers, employees, officers, directors, contractors agents and assigns (the "Released Parties") from any and all Claims and Controversies known or unknown, discoverable or undiscoverable, which exist or may exist as of the effective date of this Agreement, including, but not limited to, any and all claims which were or could have been asserted against the Coogle Parties related to or arising from the allegations of the Lawsuit, the Disputed Funds or Kevin Crofton's employment relationship with L&D and/or HMM.  Kevin Crofton hereby waives and releases all claims they he has or may have against the Coogle Parties under the Fair Labor

Standards Act ("FLSA") or the laws of the State of Florida for unpaid wages, minimum wage, overtime, and liquidated damages.

It is expressly understood that this Agreement extinguishes any and all claims against the Released Parties relating to and including, without limitation, claims for damages, costs, or attorneys' fees, whether arising under tort, contract or other theories, or any federal, state, local or other law, from the beginning of time until the date of this Agreement. Nothing in this Release shall be construed to release any signatory to this Agreement of its obligations under this Agreement, affect the ability of any Party to enforce rights under this Agreement, or affect claims accruing after the execution of this Agreement.

The Crofton Parties represent and warrant to the Coogle Parties that they have not filed any lawsuit(s), complaint(s) or initiated any other legal action(s) against the Coogle Parties or the Released Parties except the Lawsuit and that they have no pending charge(s), lawsuit(s) or any other legal action(s) against the Coogle Parties or the Released Parties. Plaintiffs represent and warrant that they are authorized to enter into and have the authority to perform the terms of this Agreement and that they have not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the claims released herein.

Kevin Crofton acknowledges and agrees that (i) he is not presently employed in any capacity by any one or more of the Coogle Parties or the Released Parties, that to the extent any employment relationship existed with those entities, it terminated on or about April 2020, (ii) that he has been paid and/or has received all compensation, wages, overtime, bonuses, commissions and/or benefits to which he may be entitled, (iii) that no other compensation, wages, overtime, bonuses, commissions and/or benefits are due to him by the Coogle Parties, and (iv) that he has received consideration in the sum of $1,000 in exchange for the release of the Claims and Controversies described below and the other covenants of this Agreement. Kevin Crofton hereby waives any and all rights he has, had or may have against the Coogle Parties and/or the Released Parties for reinstatement to his former or equivalent jobs, or to any other position with L&D or HMM and/or the Released Parties for any reason. Kevin Crofton agrees not to apply for employment or any other engagement with the Coogle Parties and/or the Released Parties. Kevin Crofton is not waiving any rights he may have to benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; to pursue claims which by law cannot be waived by signing this Agreement; and/or to enforce this Agreement.

Plaintiffs understand that they are releasing Claims and Controversies of which they may not be aware. This is Plaintiffs' knowing and voluntary intent, even though the Plaintiffs recognize that someday Plaintiffs might learn that some or all of the facts that Plaintiffs currently believe to be true are untrue and even though Plaintiffs might then regret having signed this Agreement. Nevertheless, Plaintiffs are assuming that risk, and Plaintiffs agree that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that Plaintiffs are waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in his, her or its favor at the time of signing the release which, if known

by him, her or it, would have materially affected his, her or its settlement with the party being released, and Plaintiffs understand the significance of doing so.

For the purposes of this Agreement, the term "Claims and Controversies" means any and all claims, debts, damages, demands, liabilities, benefits, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, back pay, front pay, severance pay, percentage recovery, injunctive relief, lost profits, emotional distress, mental anguish, personal injuries, liquidated damages, punitive damages, disability benefits, interest, expert fees and expenses, reinstatement, other compensation, suits, appeals, actions, and causes of action, of whatever kind or character, including without limitation, any dispute, claim, charge, or cause of action arising under the Civil Rights Act of 1964, Title VII (including the Civil Rights Act of 1991); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Employee Retirement Income Security Act; the Consolidated Budget and Reconciliation Act of 1985; the Fair Labor Standards Act; the Family and Medical Leave Act; the Labor Management Relations Act; the Employee Polygraph Protection Act; the Racketeer Influenced and Corrupt Organizations Act; the Occupational Safety and Health Act; the Electronic Communications Privacy Act; the Uniform Services Employment and Re-Employment Rights Act; the Sarbanes-Oxley Act; the Fair Credit Reporting Act; the Florida Civil Rights Act; the Genetic Information Non-Discrimination Act; Florida's Minimum Wage Act; the Florida Whistleblower's Act; all other applicable state and federal fair employment laws, state and federal equal employment opportunity laws, and state and federal labor statutes and regulations, and all other constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law (including without limitation, breach of employment agreement, other breach of express or implied contract, wrongful discharge in violation of public policy, workers' compensation retaliation, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, retaliation, tortious interference with prospective contract, tortious interference with business relationship, tortious interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional), or otherwise, whether known or unknown to the Parties, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to any and all disputes now existing between the Crofton Parties on the one hand, and the Coogle Parties or the Released Parties on the other hand, whether related to or in any way growing out of, resulting from or to result from Kevin Crofton's employment with and/or separation from the Coogle Parties or the Released Parties, for or because of any matter or thing done, omitted, or allowed to be done by the Coogle Parties or the Released Parties, as applicable, for any incidents, including those past and present, which existed or may have existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents.

3.     Payments.  The Coogle Parties shall pay the Crofton Parties FIVE THOUSAND DOLLARS ($5,000) within seven (7) days of the full execution of this Agreement. Plaintiffs'

4

counsel shall hold such funds in escrow until the Court enters an Order of Dismissal with Prejudice.  In addition, L&D shall pay the Crofton Parties the sum of THREE HUNDRED SEVENTY FIVE THOUSAND DOLLARS and 00/100 ($375,000.00), which shall be paid on a monthly basis commencing on September 1, 2020, over a term of seven (7) years at six percent (6%) interest per annum via a secured loan agreement in the form attached hereto as Exhibit No. 3, subject to any pre-existing security interests of third parties.  All payments shall be sent to the following: By ACH directly to Janice Crofton's account via the same method used in the past to make the regular monthly payments of $4,000, as referred to in the second WHEREAS clause, above. Plaintiffs' counsel shall hold such additional funds in escrow until the Court enters an Order of Dismissal with Prejudice.

The Parties agree that no amounts paid to the Crofton Parties will be treated as wages, and, accordingly, no taxes or withholdings will be deducted and no W-2 or 1099 will be issued to Kevin Crofton.  The Crofton Parties agree that they are responsible for the payment of any and all taxes that may be owed by them in connection with their claims against the Coogle Parties and for payment of any and all federal, state and local taxes which may be due by virtue of this Agreement. The Crofton Parties agree to hold harmless and indemnify the Coogle Parties should there be any resulting liability for failure to pay any and all taxes which may be owed as a result of the payments and transfer of equipment described herein.

4.    Transfer of Equipment.  The Coogle Parties shall take actions necessary to transfer the title, as appropriate, and otherwise make available for pickup by the Crofton Parties the following items within three (3) days of Court entering an Order of Dismissal with Prejudice:

    a.  2007 Freightliner Truck - VIN 1FVACWCS27HX68655
    b.  2005 Mitsubishi Truck - VIN JL6CCE1S35K004824
    c.  Hantman sausage stuffer and linker and all attachments
    d.  Two stainless steel vats/combos

The Crofton Parties are responsible for taking possession of the foregoing items within thirty (30) days of the date they receive notice from the Coogle Parties that the items are available to be picked up.

5.    Warranty of Capacity to Execute This Agreement. As a condition of receiving the benefits of this Agreement, the Parties expressly warrant and represent that the individuals executing this Agreement have the authority and capacity to execute this Agreement on behalf of the applicable party.

6.    No Admissions:  The Parties agree that this Agreement is a settlement of a disputed claim and that nothing in this Agreement constitutes or shall be construed as an admission of liability by any Party, nor shall it in any way support a finding that any Party is a "prevailing party" within the meaning of any statute or contract. The Parties shall bear their own costs and fees incurred in this dispute.

7. **Applicable Law.** It is the agreement of the Parties that this Agreement shall be construed and interpreted in accordance with the laws of the State of Florida, without regard to otherwise applicable principles of conflict of law.

8. **Attorneys' Fees.** Each party shall bear all of the attorneys' fees of its own counsel and their own costs incurred in this dispute, this Agreement, and the documents referred to herein.

9. **Entire Agreement and Successors In Interest.** The Recitals set forth above are true and correct and are hereby incorporated into this Agreement which contains the entire agreement between the Parties regard to matters set forth herein, and shall be binding upon and inure to the benefit of the successors and assigns of each.

10. **Modifications and Amendments.** This Agreement may be modified and/or amended only by written instrument fully executed by the Parties.

11. **Duplicate Originals.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery of executed copies of this Agreement, or subsequent addendums to this Agreement, by one party to the other using facsimile or any other scanning or imaging technique, shall constitute delivery of original signed counterparts for purposes of binding the Parties hereto. The Parties agree that the electronic signature of a party to this Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Agreement. The Parties agree that an electronically signed version of this Agreement shall be deemed (a) to be "written" or "in writing;" (b) to have been signed; and (c) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

12. **Additional Documents.** The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

13. **Severability.** A finding of invalidity as to any provision or section of this Agreement shall only void that provision or section, and no other. This Agreement shall be construed as if the invalid provision or section were not contained in this Agreement.

14. **Construction.** Each of the Parties has participated in the drafting of this Agreement after consulting with counsel. Therefore, the language of this Agreement shall not be presumptively construed in favor or against any of the Parties hereto.

15. **Waiver of Jury Trial.** In any litigation arising out of or relating to this Agreement or Kevin Crofton's alleged employment with Defendants and/or the Released Parties, the Parties agree all issues of law or fact shall be determined by the Court and any and all right to a jury trial is expressly waived.

16. **No Reliance.** The Parties acknowledge and assume the risk that facts, additional

6

and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement. Except as expressly provided herein, the Parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the Parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

17.     <u>Voluntary Act</u>.  Each party to this Agreement acknowledges and represents that he, she or it (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of their own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

7

## SIGNATURE PAGE FOR SETTLEMENT AGREEMENT

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, affix their signatures hereto.

**N. Duwayne Crofton 2007 Irrevocable Trust**

Dated: 9/9/2020

By: Kevin Crofton, Trustee

Dated: 9/9/2020

**Janice Crofton**

Dated: 9/9/2020

**Kevin Crofton**

**Heights Meat Market, LLC**

Dated: 8/21/2020

By: Douglas Coogle, Jr. Manager

**Lee & Davis Country Meats, LLC**

Dated: 8/21/2020

By: Douglas Coogle, Jr. Manager

Dated: 8/21/2020

**Douglas Coogle, Jr.**

Dated: 8/21/2020

**Jaime Coogle**

8

# CERTIFICATION OF TRUST

## N. DuWayne Crofton 2007 Irrevocable Trust u/t/a September 19, 2007

In line with the provisions of Fla. Stat. § 736.1017 entitled "Certification of Trust," wherein it is provided that instead of furnishing a copy of the trust instrument to a person other than a beneficiary, the trustee may furnish to the person a certificate of trust, the undersigned, *Kevin DuWayne Crofton* as Trustee of the N. DuWayne Crofton 2007 Irrevocable Trust u/t/a September 19, 2007 (the "Trust"), hereby certifies that the following information is true, correct and complete.

1. **Trust Formation.** The Trust exists and was executed on **September 19, 2007**.

2. **Name and Address of Settlor.** The name of the Settlor (or Grantor) of the Trust is **N. DuWayne Crofton.**

3. **Name and Address of Trustee.** The name and address of the current Trustee of the Trust is **Kevin D. Crofton.**

4. **Powers of Trustee.** Does the Trustee have all those powers permitted under Fla. Stat. § 736.0815 entitled "General Powers of Trustee" and Fla. Stat. § 736.0816 entitled "Specific Powers of Trustee"? ____**X**____ Yes _____ No. If not, attach a separate sheet specifically listing the Trustee's powers.

5. **Revocability of Trust.** Is the Trust revocable? _____ Yes ___**X**___ No. If revocable, the person(s) holding a power to revoke the Trust is _____.

6. **Authority of Co-Trustees.** If there is more than one Trustee, does each of the Co-Trustees have the authority to sign or otherwise authenticate documents relating to the Trust independently of each other? _____ Yes _____ No. Are all Co-Trustees required to act unanimously in order to exercise the Trust powers? _____ Yes _____ No. **Not Applicable.**

7. **Manner of Taking Title to Trust Property.** The Trustee may take title to Trust property in name of the Trust using the following language to indicate ownership:

**N. DuWayne Crofton 2007 Irrevocable Trust u/t/a
September 19, 2007, Kevin D. Crofton, Trustee.**

**OR**

**Kevin D. Crofton, as Trustee of the N. DuWayne Crofton 2007
Irrevocable Trust u/t/a September 19, 2007.**

8. **Trust Not Revoked, Modified or Amended.** The Trust has not been revoked, modified, or amended in any manner that would cause the representations contained in this Certification of Trust to be incorrect.

9. **Dispositive Terms of Trust.** In line with the provisions of Fla. Stat. § 736.1017 (4), this Certification of Trust need not (and does not) contain any of the dispositive terms of the Trust.

10. **Copies and Excerpts of Trust Agreement.** The Trustee understands that a recipient of this Certification of Trust may require the Trustee to furnish copies of any excerpts from the original

## CERTIFICATION OF TRUST:
### N. DuWayne Crofton 2007 Irrevocable Trust u/t/a September 19, 2007

Trust instrument and later amendments that designate the Trustee and confer upon the Trustee the power to act in the pending transaction.

**11.     Evidence of Trust Instrument.**  A photocopy of the first page of the Trust instrument as well as the signature pages of the Trust instrument are not required to be delivered in connection with this Certification of Trust, but are nevertheless attached hereto to evidence the establishment of this Trust as a courtesy to third parties.

IN WITNESS WHEREOF, the Trustee has set its hand and seal to this Certification of Trust on this _10th_ day of _September  2020_

Signed, sealed, and delivered
in the presence of:

Name: _Ronda K. Cullen_

_KEVIN D CROFTON_, Trustee

Name: _Janice Crofton_

STATE OF FLORIDA
COUNTY OF _Hillsborough_

The foregoing instrument was acknowledged before me this _10th_ day of _September  2020_ by _Kevin Duwayne Crofton_, Trustee, who is  (  ) personally known to me or ( X ) who has produced _FDL_ as identification.

RONDA K. CULLEN
Notary Public - State of Florida
Commission # GG 203541
My Comm. Expires Jul 29, 2022
Bonded through National Notary Assn.

NOTARY PUBLIC
Name:_____
My Commission Expires:_____

_KDC_

Page 2 of 2

## PROMISSORY NOTE AND SECURITY AGREEMENT

$ 375,000.00                                          Effective Date: Aug. __, 2020
                                                     Maturity Date: Sep. 1, 2027

      FOR VALUE RECEIVED, Lee & Davis Country Meats, LLC, a Florida Limited Liability Company, with offices at 4794 Albany Hwy., Waycross, GA 31503 (**"Borrower"**), promises to pay to N. Duwayne Crofton 2007 Irrevocable Trust, 914 Terra Mar Dr., Tampa, FL 33613 or its assigns (**"Lender"**), in lawful money of the United States of America, the principal sum of Three Hundred Seventy-Five Thousand Dollars and No Cents ($375,000.00), together with interest on the principal balance hereof from time to time existing at the per annum rate of six percent (6.00 %). Principal and interest hereunder shall be payable in the following manner: The debt shall be repaid in full in seven years, in eighty four equal monthly installments of $5,478.21. Time is of the essence hereto.

      The occurrence of any one of the following shall constitute an Event of Default hereunder:

      (a) The non-payment, within five (5) business days when the same shall have become due of any sum required to be paid by Borrower pursuant to this Note. Any such late payments shall be subject to a late charge equal to two percent (2%) of the late payment. Lender shall notify Borrower in writing of such non-payment and Borrower shall have ten (10) business days following delivery of such notice within which to cure such default by the payment to Lender of the late payment and late charge. If this note shall be in default and placed for collection, the Borrower shall pay all reasonable attorney fees and costs of collection.

      (b) The commencement by or against Borrower of any proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, receivership, dissolution, or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or any adjudication of the Borrower as insolvent or bankrupt by a decree of a court of competent jurisdiction; or any petition or application by or against Borrower for, or acquiescence in or consent by Borrower to, the appointment of a receiver or trustee for the Borrower or for all or a substantial part of the property of the Borrower; or the assignment by the Borrower for the benefit of creditors; or the written admission of the Borrower if its inability to pay its debts as they mature.

      In the event (i) that Borrower shall fail to cure any non-payment default within the time period set forth in subparagraph (a), or (ii) upon the occurrence of any of the events described in subparagraph (b) above, Lender shall have the option of accelerating the balance of the indebtedness evidenced by this Note and the accrued interest hereon, without notice, and demanding full payment of the same, in which event it shall immediately be and become due and payable. Lender has the right to accept partial payments after default and acceleration without waiving the acceleration and any such partial payments shall be applied first to late charges, then to interest due pursuant to this Note, then to any other sums required to be paid by Borrower

hereunder or under any mortgage or other instrument securing this Note, and finally to principal due under this Note.

As a condition for Lender to agree to lend Borrower the funds contemplated herein, Borrower grants to Lender a security interest in the property, tangible and intangible, of Borrower and Heights Meat Market, LLC, including but not limited to: all accounts, now existing or subsequently arising; all contract rights of Borrower, now existing or subsequently arising; all accounts receivable, now existing or subsequently arising; all chattel paper, documents, and instruments related to accounts; all intellectual property, recipes, trademarks, labels, inventory, furniture, fixtures, equipment, and supplies now owned or subsequently acquired; and the proceeds, products, and accessions of and to any and all of the foregoing (the "Collateral"). This secured interest is granted to secure the debt evidenced by this note and agreement and all costs and expenses incurred by Lender in the collection of the debt, but not including attorneys' fees. The security interest granted herein is subject to any preexisting secured interests with respect to the Collateral as of the Effective Date.

**Doug Coogle will secure the loan to the Crofton parties with Lee & Davis, both Heights Meat Markets as well as a personal guarantee until the loan is paid off.**

Borrower hereby waives any right to trial by jury in any action to enforce or defend any rights under this Note or under any agreement securing this Note.

Borrower hereby waives all rights of presentment, demand for payment, protest, notice of protest and notice of dishonor.

This Note shall be construed in accordance with the laws of the State of Florida.

Lee & Davis Country Meats, LLC

By:_____

as its: Manager

Acknowledged:

N. Duwayne Crofton 2007 Irrevocable Trust

By:_____

as its: Trustee

2

